UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| OLEG KHAMITSAEV, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:26-CV-00112 |
| | § | |
| NORBAL VASQUEZ, ET AL.,[1] | § | |
| Respondents. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner is currently detained in federal immigration custody in Texas. Before the Court is Petitioner's Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, (Dkt. No. 1), Respondents' Motion for Summary Judgment, (Dkt. No. 10), and Respondents' Supplemental Response to Verified Petition for Writ of Habeas Corpus, (Dkt. No. 12). This case is about whether Petitioner, a noncitizen designated as an arriving alien is entitled to procedural due process in the form of an individualized determination regarding his civil detention after he's spent years free from detention in the United States. The Court finds that he is.

The Court finds that Petitioner's deprivation of liberty without constitutionally adequate procedures is a violation of his due process rights, and the failure to provide due process warrants his release. For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus is granted in part. Respondents are ordered to release Petitioner **by July 21, 2026, at 5:00 p.m.** The parties are ordered to notify the Court of the status of Petitioner's release **by July 22, 2026, at 5:00 p.m.**

## I. BACKGROUND

### A. Factual Background

Petitioner, a citizen of Russia, challenges his ongoing detention without a bond

---

[1] Markwayne Mullin is automatically substituted for Kristi Noem in this case under Federal Rule of Civil Procedure 25(d). Todd Blanche is substituted for Pamela Bondi, and David Venturella is substituted for Todd Lyons under the same rule. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

hearing. According to the petition, Petitioner entered the United States on October 29, 2022, when he sought entry into the United States. (Dkt. No. 1 at 13; Dkt. No. 10-1 at 1).[2] He was served a Notice to Appear, identifying him as an arriving alien, and he was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). (Dkt. No. 1 at 13; Dkt. No. 1-2; Dkt. No. 10 at 2). His parole expired on October 28, 2023. (Dkt. No. 1 at 13). After Petitioner was paroled, he traveled to Illinois, where he filed an asylum application. (*Id.*). Petitioner complied with his parole and asylum application requirements and lived in the United States for the subsequent two years. (*Id.*). While living in the United States, he also obtained work authorization. (Dkt. No. 1-4 at 1).

Petitioner was re-detained by immigration officials on November 19, 2025, while crossing through an immigration checkpoint. (*Id.* at 14). On December 12, 2025, Petitioner was ordered removed. (Dkt. No. 1-6). However, Petitioner's order of removal is not final because he filed an appeal to the Board of Immigration Appeals (BIA), which remains pending. (Dkt. No. 22-1). Petitioner represents that his re-detention has caused his minor child to experience significant emotional distress, including "frequent episodes of crying, recurrent nighttime awakenings accompanied by fear and nightmares, and ongoing expressions of anxiety, including repeatedly asking when her father will be able to return home." (Dkt. No. 1 at 14).

### B. Legal Background

On May 15, 2025, the BIA issued a published decision expanding mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *See Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). In *Matter of Q. Li*, a noncitizen was arrested by the Department of Homeland Security (DHS) shortly after entering the United States, released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and then re-detained two years later at a DHS check-in appointment. *Id.* at 67. The BIA held that applicants for admission who are arrested without warrants while arriving in the United States and then placed in removal proceedings are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Id.* at 71.

On July 8, 2025, DHS and the Department of Justice (DOJ) released interim

---

[2] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

guidance, announcing a new legal position on detention authorities for noncitizens. The guidance interpreted the mandatory detention provision of 8 U.S.C. § 1225 as applying to the detention of all "applicants for admission," including all noncitizens who have not been admitted, whether they arrive at a port of entry or enter without inspection. This position was adopted by the BIA in September 2025. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Matter of Yajure Hurtado* held that Immigration Judges (IJs) lack authority to hear bond requests or to grant bond to all noncitizens who are present in the United States without admission because they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.*

In the months following the shift in policy, federal district courts across the country found the Government's interpretation at odds with the text of the statute and ordered bond hearings, or release, for noncitizens subject to mandatory detention under the policy. *See, e.g.*, *Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4, n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). In February 2026, the Fifth Circuit held that Section 1225(b)(2) applies to all applicants for admission, regardless of whether they are actively "seeking admission" when they are detained. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026). However, *Buenrostro* did not address the validity of due process claims such as those raised by Petitioner in this case. *See, e.g.*, *Bonilla Chicas v. Warden*, No. 5:26-CV-131, 2026 WL 539475, at *4–5 (S.D. Tex. Feb. 20, 2026).

This Court has granted habeas relief to noncitizens subject to mandatory detention under Section 1225(b)(2) when they have acquired protected liberty interests. *Lopez Moncebais v. Bondi*, No. 5:26-CV-268, slip op. (S.D. Tex. Mar. 27, 2026). In *Lopez Moncebais*, this Court found that *Buenrostro* does not foreclose due process challenges to mandatory detention, a noncitizen subject to mandatory detention may bring an as-applied due process challenge to 8 U.S.C. Section 1225(b)(2), Supreme Court precedent does not foreclose that type of challenge, and liberty interests in freedom from detention must be protected by due process of law, including individualized justification for civil detention. *See id.* The Court then applied the balancing test from *Mathews v. Eldridge* and found that the petitioner's procedural due process rights had been violated. *Id.* at 13 (citing *Mathews*, 424 U.S. at 333). The Court ordered immediate release for the due

process violation. *Id*. at 17.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### B. The Fifth Amendment Due Process Clause

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or [they] may arise from an expectation or interest created by [ ] laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (discussing liberty interests protected by the Fourteenth Amendment's due process clause); *see also Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 238 (5th Cir. 2022) ("Because the Due Process Clauses use the same language and guarantee individual liberty in the same way, it makes sense that the standards developed in the Fourteenth Amendment context must govern under the Fifth Amendment.").

### C. 8 U.S.C. Sections 1226 and 1225

Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General may release an alien detained under § 1226(a) on bond or conditional parole." *Jennings*, 583

4 / 18

U.S. at 288 (citation modified). But "aliens who are covered by § 1225(b)(2) are detained pursuant to a different process" and "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting § 1225(b)(2)(A)). Hence, "noncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an [Immigration Judge (IJ)] at any time before entry of a final removal order." *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025).

### D. Rule 56 Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the non-moving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

### III. DISCUSSION

Petitioner filed the instant petition for a writ of habeas corpus, maintaining that he is entitled to release from detention. He brings several claims for relief: unlawful denial of release on bond in violation of the Immigration and Nationality Act (INA) and bond regulations and violation of the Due Process Clause of the Fifth Amendment. Petitioner's due process claim is that Respondents have deprived him of his liberty interest to be free from detention without due process of law in violation of the Fifth Amendment. (Dkt. No. 12 at 7) (explaining the nature of Petitioner's remaining due process claim following the Fifth Circuit's decision in *Buenrostro*). Petitioner requests, among other things, that this Court issue an order requiring Respondents to release him or, alternatively, to hold a bond hearing.

Respondents move for summary judgment, asserting that Petitioner is subject to mandatory detention as an arriving alien and that his detention does not violate procedural or substantive due process. Respondents also contend that Petitioner failed to exhaust his administrative remedies. The Court principally addresses Petitioner's due

5 / 18

process claim and finds that his detention violates due process.[3] The Court begins with exhaustion.

### A. Failure to Exhaust Remedies Does Not Preclude Petitioner's Claims

Respondents first argue that the petition should be denied for failure to exhaust administrative remedies. Petitioner contends that exhausting his remedies would be futile under the BIA's decision in *Matter of Yajure Hurtado*. Respondents argue that Petitioner must request a custody redetermination before bringing his claim. They contend that federal prisoners must exhaust all administrative remedies before filing a Section 2241 habeas petition. Though, as Respondents acknowledge, the Fifth Circuit carves out an exception to exhaustion based on patent futility. (Dkt. No. 10 at 3) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)) (noting that the exception should "apply only in extraordinary circumstances"). Respondents argue that the administrative remedy here is not patently futile.

This Court, along with others, has previously analyzed exhaustion of administrative remedies prior to filing Section 2241 habeas petitions regarding the denial of bond hearings. *See, e.g.*, *Perdomo Flores v. Noem*, No. 5:25-CV-162, slip op. at 5 (S.D. Tex. Nov. 25, 2025). As noted in those cases, there is no statutory requirement to exhaust remedies for alien detention claims; rather, "[u]nder the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337, 2025 WL 2691828, at *6 (W.D. Tex. Sep. 22, 2025) (quoting *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007)); *see also* 8 U.S.C. § 1252(d)(1) ("A court may review *a final order of removal* only if . . . the alien has exhausted all administrative remedies." (emphasis added)).

Here, Petitioner is not asking the Court to review a final removal order, so there is no statutory requirement to exhaust. Aside from statutory requirements, federal prisoners generally must exhaust administrative remedies before filing Section 2241 habeas petitions. *See, e.g.*, *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012). However, exhaustion may be waived "where the attempt to exhaust such remedies would itself be a patently futile course of action." *Id.* (citing *Fuller*, 11 F.3d at

---

[3] Because the Court grants Petitioner's requested relief without consideration of his other claim, the Court will decline to address the merits of that claim.

62).

Because the BIA has held that IJs lack jurisdiction to hear claims like Petitioner's, it would be patently futile to require him to seek relief in immigration court on this issue. Petitioner's request would be futile because an IJ would not have the authority to hear his claim under the BIA's current caselaw. The Court finds that, to the extent that prudential exhaustion of remedies would be required, it should be waived in this case. Therefore, Respondents' motion for summary judgment based on failure to exhaust remedies is denied.

**B. Petitioner's Detention Violates Procedural Due Process**

The remaining issue before the Court is whether Petitioner has a protected liberty interest in his freedom from detention following his presence in the United States despite his classification as an "arriving alien" and his expired humanitarian parole. This issue is similar to the issue presented in *Lopez Moncebais*, as explained above. *See supra* at Part I.B. Though, the instant facts are distinguishable. Petitioner entered at a port of entry as an "arriving alien" and was granted parole, as opposed to Lopez Moncebais, who entered without inspection and remained present in the United States for decades. This distinction is important because noncitizens who are paroled into the country are subject to the "entry fiction," a legal fiction providing that those "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

Petitioner challenges his mandatory detention without a bond hearing. He asserts that his ongoing detention is a deprivation of a protected liberty interest that has not been justified by an individualized determination that he should be detained. Respondents argue that his mandatory detention does not violate procedural due process. First, they argue that any challenge to the mandatory detention provision is inherently substantive instead of procedural. Second, they argue that, even if plausible, a procedural due process claim would fail here because the Supreme Court denied a challenge to mandatory detention in *Demore*, and procedural due process only extends so far as a statute allows. 538 U.S. 510. Finally, they argue that the *Mathews* factors are inapplicable. 424 U.S. 319 (1976). Notably, these arguments are identical to the

arguments considered—and rejected—in *Lopez Moncebais*.

At bottom, the Court must consider whether mandatory detention under 8 U.S.C. § 1225(b) violates procedural due process as it applies to Petitioner. First, the Court must determine whether Petitioner could acquire a protected liberty interest in light of the entry fiction. If a liberty interest could be acquired, the Court must then determine whether Petitioner's detention violates his rights under the Fifth Amendment Due Process Clause after applying the *Mathews* factors. The Court concludes for the reasons explained below that the mandatory detention of Petitioner, without any individualized determination, is a deprivation of liberty that must be safeguarded with adequate procedures.

### 1. The Entry Fiction and Other Precedent Do Not Bar Due Process

The Fifth Amendment provides that "[n]o *person* shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V (emphasis added). This guarantee extends to every person in the United States, regardless of their immigration status. *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *see also A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (explaining that due process protections apply to noncitizens). Due process includes both procedural and substantive rights. Procedural due process promotes fairness in government decisions "[b]y requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Id.*

Like in *Lopez Moncebais*, Respondents argue that Petitioner's as-applied constitutional challenge cannot be brought as a procedural due process claim because the statute governing his detention does not entitle Petitioner to any procedures at all. Respondents rely on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), and a string of similar cases. (Dkt. No. 6 at 5–7) (citing *Reno v. Flores*, 507 U.S. 292, 308 (1993); *Michael H. v. Gerald D.*, 491 U.S. 110, 119–21 (1989); *Duarte v. City of Lewisville*, 858 F.3d 348 (5th Cir. 2017)). However, the rights and statutes involved in most of these

cases are distinguishable from the instant procedural due process challenge. *Doe*, 538 U.S. 1 (permitting state regulation of the procedures to which convicted sex offenders are entitled in the sex-offender registration process); *Michael H.*, 491 U.S. 110 (rejecting a procedural due process challenge to state law terminating a liberty interest in a parent's relationship with their child); *Duarte*, 858 F.3d 348 (applying *Doe* in finding that state laws regulating where convicted sex offender can live do not trigger procedural due process).

And in the fourth case, *Reno v. Flores*, Respondents' alteration of the quote overextends the Court's meaning. Respondents imply that the Supreme Court there denied the procedural due process claim because it essentially was a substantive due process claim; and in fact, it's what they attempt to argue here. However, the Court stated in full: "This is just *the* 'substantive due process' argument recast in 'procedural due process' terms, and we reject it for the same reasons." *Flores*, 507 U.S. at 308 (emphasis added). The Court's conclusion was narrower and not as general as Respondents contend. Because the Court had already denied the substantive due process claim, it relied on the same reasons to deny the procedural due process claim. The Court did not proclaim generally that this type of challenge is necessarily a substantive due process claim.

As held in *Lopez Moncebais*, the distinction between these cases relied on by Respondents and the instant challenge fatally undermines Respondents' arguments. The challenge here is not one to determine the extent to which states can infringe somewhat attenuated liberty interests of convicted sex offenders who "ha[ve] already had [ ] procedurally safeguarded opportunit[ies] to contest [their convictions]," including liberty interests like where they may live and whether or not they will be registered on a sex-offender registry for their predicate conviction. *Duarte*, 858 F.3d at 352. The challenge here is to mandatory detention of all noncitizens charged as inadmissible to the United States, regardless of their flight risk, danger to society, or length of time residing in the United States free from detention. The denial of the right to a hearing on the deprivation of a noncitizen's liberty is occurring at the inception of removal proceedings, even before the noncitizen's removability is determined. Unlike in the contexts of the cases relied on by Respondents, this deprivation of liberty is occurring without "procedurally safeguarded opportunity" to contest their detention. This context in which a liberty

interest is being deprived distinguishes it from the cases relied on by Respondents. Accordingly, the Court rejects Respondents' arguments.

The Court next turns to the liberty interest. Respondents rely on two Supreme Court cases: *Demore v. Kim* and *Department of Homeland Security v. Thuraissigiam*. In *Demore*, the Supreme Court rejected a constitutional challenge to mandatory detention of noncitizens with certain criminal convictions under 8 U.S.C. § 1226(c). 538 U.S. at 517–18. In considering a line of caselaw authorizing mandatory detention of noncitizens in certain circumstances, the Court found that the mandatory detention of "a criminal alien who has conceded that he is deportable," is constitutionally permissible and falls in line with these cases. *Id.* at 531 (citing *Wong Wing v. United States*, 163 U.S. 228 (1896); *Carlson v. Landon*, 342 U.S. 524 (1952); *Flores*, 507 U.S. 292)). The Court there ultimately denied the due process challenge to the Section 1226(c),[4] finding that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527–28 (referencing "criminal alien[s]" twenty-eight times in the majority opinion).

Here, *Demore* is cited for the broader proposition that "[d]etention during removal proceedings is a constitutionally permissible part of that process." 538 U.S. at 531. It is true that civil detention is authorized during removal proceedings when it "bears a reasonable relation to the purpose" of the detention. *See Zadvydas*, 533 U.S. at 690 (citation modified). But, as in *Lopez Moncebais*, the Court finds that *Demore* does not necessarily permit all conceivable mandatory detention policies for noncitizens, and it is instead much narrower. While detention itself may be constitutionally permissible, that is not to say that detention is unchecked by a noncitizen's entitlement to due process under the Fifth Amendment. *Demore* was narrowly focused on mandatory detention *as a result of criminal convictions*. *Demore* does not validate mandatory detention for all applicants for admission, even those like Petitioner who have no criminal record, and it should not preclude due process challenges for detainees under Section 1225(b)(2). For this reason, the Court finds that Petitioner's challenge is not presently foreclosed by

---

[4] Section 1226(c), titled Detention of Criminal Aliens, requires detention of inadmissible and deportable aliens who have committed certain criminal offenses identified in statute. 8 U.S.C. § 1226(c).

*Demore* or this line of precedent.

Next, Respondents argue that Petitioner's procedural due process rights only extend to rights "provided by statute" pursuant to *Thuraissigiam*. While Respondents do not fully address this argument in the briefing, the Court will consider the general argument that Petitioner's rights are limited to the statute by virtue of the entry fiction. In *Thuraissigiam*, the Supreme Court held that a noncitizen who recently crossed the border without inspection lacked the constitutional due process right to review procedures that were not provided by statute and is treated for due process purposes as if stopped at the border. *Thuraissigiam*, 591 U.S. at 140. This is the entry fiction. In *Lopez Moncebais*, the facts of *Thurassigiam* were distinguishable from the facts there, so the Court did not analyze the issue at length. Here, however, the Court must determine whether the entry fiction precludes Petitioner's due process claim because he is classified as an arriving alien and subject to the entry fiction despite his parole.[5]

"[P]arole creates something of legal fiction; although a paroled alien is physically allowed to enter the country, the legal status of the alien is the same as if he or she were still being held at the border waiting for his or her application for admission to be granted or denied." *Duarte v. Mayorkas*, 27 F.4th 1044, 1058 (5th Cir. 2022) (citation omitted). Though, there are distinctions "between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (citation modified). "[O]nce [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

---

[5] This issue has been considered by other district courts, which have found that the entry fiction does not preclude the acquisition of protected liberty interests under these facts. *See, e.g.*, *Strunin v. Garcia*, No. 5:26-CV-00106, — F. Supp. 3d —, 2026 WL 958952, at *6 (S.D. Tex. Mar. 3, 2026); *see also Baptiste v. Bondi*, No. CV 26-2586, 2026 WL 1684433, at *5, report and recommendation (D. Ariz. May 21, 2026) (collecting cases). The Court finds the reasoning relied on in these cases persuasive and applies it here.

*Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In light of these principles, *Thuraissigiam* and other entry fiction cases do not preclude Petitioner's entitlement to due process or acquisition of a protected liberty interest. Importantly, "the Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the detention of a person living freely, for years, within the United States—and its expansion here cannot be justified.'" *Strunin*, No. 5:26-CV-00106, 2026 WL 958952, at *7 (first quoting *Torres v. Hermosillo*, No. 2:25-CV-2687, 2026 WL 145715, *4 (W.D. Wash. Jan. 20, 2026) (citation modified), then citing *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 147, 151 (W.D.N.Y. 2025)). In *Strunin*, the Court relief on *Jennings* to distinguish the petitioner's challenge from *Thuraissigiam* because he did not actually challenge his removability—just the process received in connection with his detention. *Strunin*, No. 5:26-CV-00106, 2026 WL 958952, at *7. The Court agrees with *Strunin* that the instant liberty interest is not limited by *Thuraissigiam* because that holding only limits rights "regarding admission." *Thuraissigiam*, 591 U.S. at 141. Here, Petitioner's challenge to his detention does not concern his admission.

Further, Petitioner's humanitarian parole into the United States and residence here for years are distinguishable from Thuraissigiam, who was apprehended 25 yards from the border. Extending the entry fiction argument this far would be an unreasonable stretch of legal fiction. The entry fiction hinges on facts not present in this case: "[A]s to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Thuraissigiam*, 591 U.S. at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660). Here, Petitioner has lived in the United States for years with his wife and child; he complied with the Government's requirements for his humanitarian parole and asylum application; and he has been lawfully employed while living here. Even if Petitioner is considered to be stopped at the threshold with respect to his rights regarding admission, these facts do not warrant an extension of the entry fiction to strip him of due process rights with respect to his present detention.

Due process applies to all persons. U.S. Const. amend. V ("No person shall . . . be

deprived of life, liberty, or property, without due process of law . . . ."); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment . . . protects every one of these persons from deprivation of life, liberty, or property without due process of law."). While the entry fiction permissibly limits due process rights as to admission following *Thuraissigiam*, that conclusion does not compel the limitation of Petitioner's rights here. As one district court put it, "[p]retending that Petitioner never entered the United States not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." *Torres*, 2026 WL 145715, at *4. Accordingly, the Court concludes that the entry fiction does not preclude Petitioner from acquiring a protected liberty interest while living in the United States free from detention.

### 2. Petitioner Has a Liberty Interest in Freedom from Detention

Now that the Court has determined that Petitioner's due process rights are not nullified by the entry fiction, the Court completes the due process analysis. Challenges to procedural due process proceed in two parts: first, there must be a deprivation of a protected interest in property or liberty, and second, there must be constitutionally inadequate procedures prior to that deprivation. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or [they] may arise from an expectation or interest created by [ ] laws or policies." *Wilkinson*, 545 U.S. at 221 (2005); *Douglass*, 46 F.4th at 238. Here, the Court finds that Petitioner clearly has a liberty interest at stake because he is subject to detention in civil confinement. Freedom from detention is implicit in the word liberty. By being detained after residing in the United States for years, Petitioner was deprived of his liberty upon his detention.

Because the Court finds that there is a deprivation of a liberty interest, it next determines whether constitutionally adequate procedures were used in connection with the deprivation using the *Mathews* test.

### 3. The Mathews *Factors Weigh in Favor of Petitioner*

"The fundamental requirement of due process is the opportunity to be heard at a

meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. *Mathews* established a three-factor balancing test to determine whether procedures prior to a deprivation are constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35. The Court considers the application of these factors here.

First, Petitioner has constitutionally protected liberty interests at stake. As discussed above, Petitioner's interest in liberty is strong and fundamental. Petitioner entered in 2022 and has lived in the United States continuously for several years with his wife and child. While living here, he has worked steadily using his employment authorization document. He has no criminal history. When he entered the United States, he was granted humanitarian parole and permitted to live here. Though his parole was temporary, it facilitated his acquisition of equities that create a liberty interest.

The Court has previously found that a prior release like Petitioner's strengthens the liberty interest of a noncitizen because their release created an expectation that they would be free from detention during the pendency of their removal proceedings. *Bonilla Barrios v. Noem*, No. 5:26-cv-172, slip op. at 4 (S.D. Tex. Apr. 2, 2026). As the Court explained there, liberty interests "may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In this case, Petitioner had an expectation, in addition to his residence since 2022, that he would be free from detention or at least entitled to seek bond while his removal proceedings were pending. He was released from detention in 2022 and spent several years out of custody before he was re-detained at a checkpoint. That expectation interest strengthens his liberty interest. These facts all support the finding that Petitioner has a strong liberty interest.[6] This factor weighs strongly in favor of Petitioner.

Second, the Court evaluates the risk of an erroneous deprivation of liberty through

---

[6] As the Court discussed above, "[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Beyond the liberty interest in freedom from detention, other liberty interests compound as noncitizens spend time living in the United States without a deprivation of that liberty, particularly when that freedom extends for years while the noncitizen

the procedures used. The risk inquiry is best framed as whether the mandatory detention here risks a deprivation of liberty that is unjustified. *See Carey v. Piphus*, 435 U.S. 247, 259–60 (1978) (citation modified) (noting that procedural due process protections prevent "mistaken or unjustified deprivation of life, liberty, or property" and "[s]uch rules 'minimize substantively unfair or mistaken deprivations'"). Additionally, the balancing test asks the Court to consider the "probable value, if any, of additional or substitute safeguards." *Mathews*, 424 U.S. at 334–35.

In analyzing the procedures that Petitioner received prior to or in connection with his deprivation, the Court finds that insufficient procedures were provided to safeguard his liberty interest. The procedure used includes Petitioner classification as an arriving alien, despite his entry in 2022, and an immigration officer's determination that he is "an alien seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2). This means that Respondents determined that Petitioner must be detained because he could not prove, clearly and beyond a doubt, to an immigration officer that he was not entitled to be admitted at the time he was detained. The limited and unilateral procedure here creates a high risk of unjustified deprivation in light of Petitioner's years of presence in the United States. Generally, a custody redetermination, or bond hearing in immigration court, safeguards the liberty interests of noncitizen detainees. *See* § 1226(a). However, the procedures here under Section 1225(b) create a high risk of erroneous deprivation because the statute applies to all noncitizens who fall under *Matter of Q. Li* without consideration of factors justifying detention or release, like years of continuous presence and other equities.[7] This factor also weighs in favor of Petitioner.

Third, any burden imposed on the Government does not outweigh Petitioner's

---

has time to establish roots and connections in their community. *See, e.g.*, *Zafra*, No. EP-25-CV-541, 2025 WL 3239526, at *4; *see also supra* n.8 (reasoning that "liberty interests in freedom from detention increase as other liberty interests, like the freedom to earn a living and establish a home, extend for years without a deprivation by the government").

[7] This is distinguishable from *Demore*. 538 U.S. 510. There the Supreme Court held that mandatory detention under Section 1226(c) was permissible, but that statute only applied to "a limited class of deportable aliens—including those convicted of an aggravated felony." *Id.* at 518. *Demore* essentially held that release on bond could be withheld from noncitizens convicted of a predicate criminal offense, which presumably correlates to a risk of flight and danger. *See id.* at 513, 520 (noting that Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers"). No such evidence has been presented here with respect to applicants for admission.

interests described above. The Government has a weighty interest in ensuring a noncitizen's appearance at their removal proceedings, removing deportable noncitizens, and enforcing immigration laws. However, those interests are not at odds with providing bond hearings to noncitizens or providing justification for detention, and there is no evidence in the record to believe that Petitioner would be a flight risk or danger. Petitioner has no record of committing any crime and has significant ties to his community after living in the United States for several years. While Section 1225(b) does not provide that bond hearings may be given to arriving aliens, due process requires that their detention must be justified. *See Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates [the Due Process Clause] unless the detention is ordered in . . . certain special and 'narrow' nonpunitive 'circumstances,' where a special justification . . . , outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (citation modified). Thus, Petitioner's interests in liberty and the risk he faces of an erroneous deprivation outweigh the Government interest.

Having considered Petitioner's petition, Respondents' motion, and the law, the Court finds that the balance of the factors establishes that the Government violated Petitioner's due process rights when it deprived Petitioner of his liberty interest without due process of law. Even though Congress may make rules as to aliens that would be unacceptable if applied to citizens, *Demore*, 538 U.S. at 522, Petitioner's interest in liberty after living in the United States for several years—free from detention—triggers a liberty interest that makes his detention without any individualized determination unacceptable. As Respondents are not entitled to judgment as a matter of law, their motion for summary judgment is denied. Petitioner's petition for a writ of habeas corpus is granted as to his procedural due process claim.[8]

## C. Remedy

A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition. *See Brown v. Davenport*, 596 U.S. 118, 127–28 (2022). The Court finds that the specific harm Petitioner suffered—unlawful deprivation of liberty without due process—is remedied by granting

---

[8] The Court will decline to address the merits of Petitioner's other claim because it grants the relief he requests on this ground.

16 / 18

his immediate release, rather than ordering a bond hearing.[9] Therefore, the Court, exercising its equitable discretion in fashioning appropriate habeas relief, orders Respondents to release Petitioner from custody. *See Delgado Rodriguez*, No. 4:26-650, 2026 WL 517983, at *4 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)) ("The remedy for unlawful detention 'is, of course, release.'"); *Reynoso Ochoa v. Vergara*, No. 1:26-CV-266, 2026 WL 482211, at *4 (same).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief, (Dkt. No. 1), is **GRANTED in part and DENIED in part**, and Respondents' Motion for Summary Judgment, (Dkt. No. 10), is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody **by July 21, 2026, at 5:00 p.m.**, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release **by July 22, 2026, at 5:00 p.m.** Respondents must notify Petitioner's counsel of the exact time and location of Petitioner's release **no less than two hours** prior to Petitioner's release from custody. Respondents are ordered to return Petitioner's identity documents and personal effects upon release.

All other relief requested by Petitioner is **DENIED**.

If Petitioner is re-detained, Petitioner must be afforded procedural due process as guaranteed by the Due Process Clause of the Fifth Amendment.

A final judgment will follow.

---

[9] The Court recognizes the weight of its decision to order Petitioner's release from custody. When the Court first began considering habeas petitions in the context of mandatory detention under Section 1225(b), it ordered bond hearings as an adequate remedy for detention that it found to be unlawful. *See, e.g.*, *Padron Covarrubias*, No. 5:25-CV-112, 2025 WL 2950097, at *5. However, that relief was in part premised on the Court's finding that Section 1226(a) was more applicable to each petitioner's detention. Ultimately, the Court determined that a hearing after unjustified deprivation of liberty does not cure the deprivation. *See, e.g.*, *Lopez Moncebais*, No. 5:26-CV-268, slip op. at 16 (Mar. 27, 2026). As such, the Court finds that the same principle extends to this due process violation and it does not order a bond hearing.

It is so **ORDERED**.

**SIGNED** on July 20, 2026.

_____

John A. Kazen
United States District Judge